UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal No. 19-mj-00264-GMH |
| | : | |
| **TRICIA STEELE BOUTROS,** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MOTION TO REVOKE RELEASE

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court to revoke the Defendant's release under 18 U.S.C. § 3148(a) for violating conditions of her release. The Defendant violated her conditions of release by committing fraud in violation of federal and District of Columbia law and conducting numerous financial transactions over $1,000 without the approval of the Pretrial Services Agency (PSA).

### BACKGROUND

On October 24, 2019, Magistrate Judge G. Michael Harvey issued a criminal Complaint charging the Defendant with one count of Wire Fraud and one count of Aggravated Identity Theft. On October 28, 2019, the Defendant was arrested on the Complaint and had her initial appearance before Magistrate Judge Robinson.

Judge Robinson released the Defendant subject to certain conditions, including that she "not violate federal, state, or local law while on release," and "not conduct any financial transaction over $1,000 without approval from PSA (except for monthly child support and rent)."  Order Setting Conditions of Release, ECF No. 9. The release order explained that the penalties and sanctions for violating her release conditions included revocation of release, an order of detention, and prosecution for contempt of court.[1]  As part of the release order, the Defendant signed an

---

[1] The Government may also file a motion for an order to show cause as to why the Defendant should not be

"Acknowledgment" that she was "aware" of her release conditions and the penalties and sanctions for a violation.

### UNAUTHORIZED WIRE TRANSFER FROM J.S.'S CHARLES SCHWAB ACCOUNT TO DEFENDANT'S CHARLES SCHWAB ACCOUNT

Victim J.S. maintains an account at Charles Schwab Bank ("Charles Schwab").[2] Throughout the month of October 2019, two males contacted J.S. by phone to supposedly update software on his computer for a fee. J.S. declined to do so. However, on October 30, 2019, J.S. finally agreed to pay for the ostensible software update.[3] J.S. provided information about his computer to a man on the phone for the purported installation. J.S. maintained information about his Charles Schwab account on his computer.

On October 31, 2019, or November 1, 2019, J.S. noticed three unauthorized wire transfers from his Charles Schwab account. One of the unauthorized transfers occurred on October 30, 2019. It was a $29,000 wire from J.S.'s Charles Schwab account to Charles Schwab account no. XXXX-XXXX-6740 held in the name of Tricia Steele Boutros and her father. J.S. does not know the Defendant and has no business or personal relationship with her. J.S. reported the fraudulent wire transfers to Charles Schwab.

The accounts records for the Defendant's Charles Schwab account reflect an incoming $29,000 wire transfer on October 30, 2019. The balance in her account after the wire was $114,376.12. On October 31, 2019, the Defendant made a $10,000 transfer and a $49,000

---

held in contempt for violating the United States Code and the D.C. Code.

[2] The FBI interviewed J.S. on November 7, 2019.

[3] According to J.S., the software was called TeamViewer. TeamViewer allows someone to remotely access and control a computer. It includes the ability to drag and drop files from one computer to another.

2

transfer to one of her Charles Schwab brokerage accounts, and a $50,000 transfer to another Charles Schwab brokerage account. The balance in account no. XXXX-XXXX-6740 as of October 31 was $2,080.68.[4]

On November 7, 2019, Charles Schwab reversed the unauthorized $29,000 wire transfer from the Defendant's account to J.S.

## DEFENDANT'S COMMUNICATIONS WITH CHARLES SCHWAB

On November 7, 2019, the Defendant contacted Charles Schwab via an on-line chat session about the reversal of the $29,000 transfer from J.S.'s account to her account. Ex. A. During her chat session, the Defendant falsely claimed that she received a $29,000 wire "last week in exchange for property sold to the buyer." She insisted that the transaction should not have been reversed "as the property was transferred last week."

During her chat with the Charles Schwab representative, the Defendant identified J.S. by name as the sender of the wire and falsely claimed that she could not "get a hold" of him. The Charles Schwab representative repeatedly asked the Defendant to provide more details about the transaction, "such as the purpose of the wire" and her "relationship to the sender." The Defendant never responded to the requests and ended the chat session.

Later on November 7, 2019, the Defendant contacted a Charles Schwab representative by email. Ex. B. In the email, the Defendant again falsely asserted that she received the $29,000 "for a property sale/transfer." She maintained that she was "certain" that the sender authorized the wire transfer because "he sent [her] the wire confirmation screenshot." The Defendant accused the sender of committing wire fraud for recalling the wire when he "did in fact receive the

---

[4] There were other debits to the account on October 31. All of the amounts were below $1,000.

property."

In a November 8, 2019, email to the same Charles Schwab representative, the Defendant stated that she wanted to make a "claim of loss." She summarized her claim as follows:

> On November 7, 2019, I was forced to assume a 29,000 USD loss for the benefit and of another schwab client's [sic] (the "sending party"), who utilized Schwab's wire transfer service on October 30, 2019 and November 7th, 2019 to achieve a windfall profit in unjust enrichment. Both wire transfers were ordered, initiated and verified with the input of the sending party alone and each were facilitated by Schwab's verification policies, which never required my input to complete.

Ex. C.

On November 11, 2019, a Charles Schwab representative from its Legal Services group contacted the Defendant by email to request the name of her attorney and to advise her that all future communications should be directed to the representative. Ex. D. The Defendant replied by email on November 12, 2019,

> I did consult one [sic] my personal lawyers who is working for me on another matter to explain the circumstances and material I'd gathered, (including written communications with the buyer (the sender of the wire), the screenshots the buyer (sender) sent me from his computer after sending the wire showing the confirmation screen and a screen shot of the email he received from schwab showing the wire was complete). The buyer/wire sender sent me the aforementioned evidence, asking me to release from escrow the sold property he purchased in exchange for the wire, and I did so that evening upon seeing the wire had posted.

Id.

On November 14, 2019, the Defendant again contacted Charles Schwab via an on-line chat session. Ex. E. During this communication, the Defendant "assure[d]" the representative that the sender [meaning J.S.] "provided back up documenation [sic] on the date the wire was [sent]."

**WIRE TRANSFERS FROM DEFENDANT'S CHARLES SCHWAB BROKERAGE ACCOUNT TO A PAXOS TRUST ACCOUNT**

On or about the following dates, the Defendant wired amounts greater than $1,000 from her Charles Schwab brokerage account ending in -642 to an account at Paxos Trust Company LLC (Paxos Trust) ending in -820. Paxos Trust offers crypto products and services. The email confirmations for the wires are attached as Exhibit F.

| Date | Amount |
|---|---|
| October 29, 2019 | $7,550 |
| October 31, 2019 | $5,000 |
| November 1, 2019 | $4,500 |
| November 1, 2019 | $3,000 |
| November 4, 2019 | $4,000 |
| **Total:** | $24,050 |

**BASIS FOR REVOCATION**

The Defendant violated her release conditions by participating in a scheme to fraudulently obtain funds from J.S.'s Charles Schwab account and conducting multiple financial transactions over $1,000 without PSA approval.

The scheme to defraud involved the hacking of J.S.'s computer under the guise of installing or updating software. The participants in the scheme used their illegally obtained access to J.S.'s computer to obtain information about J.S.'s Charles Schwab account and initiate an unauthorized $29,000 wire transfer to the Defendant's Charles Schwab account.

J.S. does not know the Defendant and has never had any communication with her. After Charles Schwab reversed the transfer, the Defendant had numerous electronic communications with Charles Schwab representatives during which she created a cover story to make it appear that the transfer was legitimate. In an effort to fraudulently induce Charles Schwab to return the funds

to her account, the Defendant repeatedly and falsely claimed that the $29,000 was for property she sold to J.S.

The Defendant committed, among other offenses, Wire Fraud, in violation of 18 U.S.C. § 1343, Bank Fraud, in violation of 18 U.S.C. § 1344, and First Degree Fraud, in violation of 22 D.C. Code §§ 3221(a), 3222(a)(1).[5]

The Defendant also violated her release conditions by not obtaining PSA approval for the: (1) supposed sale of property to J.S. for $29,000; (2) transfer of $10,000, $49,000, and $50,000 from her account Charles Schwab account no. XXXX-XXXX-6740 to two different Charles Schwab brokerage accounts on October 31, 2019; and (3) the five transfers over $1,000 from her Charles Schwab brokerage account to an account at Paxos Trust between October 29, 2019, and November 4, 2019.

---

[5] The essential elements of Wire Fraud are that a defendant "knowingly and willingly entered into a scheme to defraud and that an interstate wire communication was used to further the scheme." United States v. Alston-Graves, 435 F.3d 331, 337 (D.C. Cir. 2006).

The essential elements of Bank Fraud under 18 U.S.C. § 1344(1) are that a defendant: (1) knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution by means of material false or fraudulent pretenses, representations, or promises; (2) the defendant did so with the intent to defraud the financial institution; and (3) the financial institution was then insured by the Federal Deposit Insurance Corporation (FDIC). Mod. Crim. Jury Instr. 3rd Cir. 6.18.1344 (2018). Funds deposited at Charles Schwab were insured by the FDIC.

The essential elements of Bank Fraud under 18 U.S.C. § 1344(2) are that a defendant: (1) knowingly executed or attempted to execute a scheme to obtain the money, funds or other property owned by or under the control of a financial institution by means of material false or fraudulent pretenses, representations, or promises; and (2) the financial institution was then insured by the FDIC. Id.

The essential elements of First-Degree Fraud under the D.C. Code are that a defendant: (1) engaged in a scheme or systemic course of conduct; (2) intended to deceive or cheat someone or obtain property of another by means of a false representation or promise; (3) as a result of that scheme or systematic course of conduct, the defendant obtained property of another or caused another to lose property; and (4) the property lost or obtained had a value of $1,000 or more. Criminal Jury Instructions for DC Instruction 5.200 (2019); see also United States v. Han, 280 F. Supp. 3d 144, 152 (D.D.C. 2017).

## CONCLUSION

The Defendant's conduct demonstrates that she poses a financial danger to the community if on release and is unwilling to abide by the Court's orders.   For the reasons discussed above, the Government requests that the Court find that the Defendant has violated her release conditions and revoke her release pursuant to 18 U.S.C. § 3148(a).

Respectfully submitted,

JESSIE K. LIU
United States Attorney

By:           /s/
Anthony Saler, D.C. Bar No. 448254
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6971
Anthony.Saler@usdoj.gov