UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TRICIA STEELE BOUTROS,<br><br>    Defendant. | Criminal No. 19-mj-00264 |

**MEMORANDUM OF FINDINGS OF FACT
AND STATEMENT OF REASONS IN
SUPPORT OF ORDER OF REVOCATION AND DETENTION**

**I. INTRODUCTION**

Defendant is charged by Complaint with one count of Wire Fraud, in violation of 18 U.S.C. § 1343, and one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028. After the Court ordered Defendant's release subject to conditions on October 28, 2019, the Government, on November 21, 2019, moved to revoke Defendant's release conditions. First, the Government asserted that Defendant committed "Wire Fraud, in violation of 18 U.S.C. § 1343, Bank Fraud, in violation of 18 U.S.C. § 1344, and First Degree Fraud, in violation of 22 D.C. Code §§ 3221(a), 3222(a)(1)." Government's Motion to Revoke Release ("Government's Motion") (ECF No. 10) at 6. Second, the Government asserted that Defendant violated the condition of release which prohibits Defendant from conducting "any transaction over $1,000[,]" except for child support and rent, without the prior approval by Pretrial Services. Order Setting Conditions of Release (ECF No. 9) at 2. During a hearing on December 9, 2019, the Government declined to argue that Defendant violated federal and state criminal fraud laws.

During the same hearing and during another hearing on December 11, 2019, the Government did, however, assert another violation of law to support its motion for revocation. *See* Notice of Filing (ECF No. 19). The Government introduced evidence of an executed search warrant which revealed that a package containing controlled substances was addressed to Defendant at her home address. Defendant disputed the Government's characterization of the financial transactions and the information revealed through the executed search warrant.

The undersigned conducted hearings on the Government's Motion on December 9, 2019 and December 11, 2019. Upon consideration of the evidence offered by the parties, the proffers and arguments of counsel, and the entire record herein, the undersigned ordered Defendant held without bond pursuant to 18 U.S.C. § 3148(b)(1)(A) and 18 U.S.C. § 3148(b)(1)(B). The findings of fact and statement of reasons in support of the Order of Revocation and Detention follow.

## II. THE BAIL REFORM ACT

The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, provides, in pertinent part, that if a judicial officer "shall order an order of revocation and detention if, after a hearing, the judicial officer . . . finds that there is . . . probable cause to believe that the person has committed a Federal, State, or local crime while on release." 18 U.S.C. §§ 3148(b), (b)(1)(A). Additionally, a judicial officer "shall order an order of revocation and detention if, after a hearing, the judicial officer . . . finds that there is . . . clear and convincing evidence that the person has violated any other condition of release." *Id.* §§ 3148(b), (b)(1)(B).

If a judicial officer finds that the Government meets its burden on either of these grounds, the judicial officer shall enter an order of revocation only if "based on the factors set forth in

section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community" or "the person is unlikely to abide by any condition or combination of conditions of release." *Id.* §§ 3148(b)(1)(A)-(B).  If there is probable cause to believe that the person on release committed a federal, state or local felony, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."  *Id.* § 3148(b)(1)(B).

### III. FINDINGS OF FACT

The Government offered the testimony of FBI Special Agent Joshua A. Huckel, and the exhibits attached to the Government's filings associated with the Motion to Revoke Pretrial Conditions.  (ECF Nos. 10, 15, 16, 19).  Defendant offered as evidence two exhibits which the court received during the December 9, 2019 hearing.  (ECF No. 20).  Pretrial Services also filed a Status Report.  (ECF No. 18).  Upon consideration of all of the evidence, the Court now makes the following factual findings to supplement the ones set forth on the record on December 11, 2019.

#### A.  Financial Transactions Over $1,000

Defendant maintains three accounts at issue here: a Charles Schwab brokerage account, a Paxos Trust Company LLC account, and a Paxful account.  Paxos offers cryptocurrency products and services. Paxful is a peer-to-peer market for cryptocurrency.

On October 25, 2019, Defendant transferred $14,000 and $16,000 from her Charles Schwab account to her Paxos account.

On October 30, 2019, a person by the initials J.S. in Myrtle Beach, South Carolina, who suffers from Parkinson's Disease, gave computer access to someone J.S. knew as "Jack Wilson" and an unnamed associate of "Jack Wilson." These men contacted J.S. on multiple occasions about what they called "software updates" to a program on J.S.'s computer which provides remote access, "Team Viewer." After several calls, J.S., on October 30, 2019, acquiesced to their request for computer access on October 30, 2019. A day or two later, several transfers from J.S.'s account took place, one of which was a $29,000 transfer from J.S.'s Charles Schwab Inherited IRA account and Defendant's Charles Schwab brokerage account. Another transfer reflected a $5000 transfer to an account maintained by "Rockwell Capital Management" at the State Bank of Southern Utah in Las Vegas, Nevada. Another transfer was attempted to an account maintained by Ran Longjun at the Bank of China in Hong Kong, but that transfer was not fulfilled. In one call with Agent Huckel, J.S. explained that J.S. made the wire transfers. In another call with Agent Huckel, J.S. explained that "Jack Wilson" and the unnamed associate hacked into J.S.'s computer.

On October 31, 2019, Defendant, through her Paxful account name, "freedc," made three transfers of Bitcoin to a user with the username "RedWomen." In total, these three transfers included bitcoin valued at $29,000.

On November 7, 2019, Charles Schwab reversed J.S.'s wire transfer to Defendant's Charles Schwab brokerage account. Defendant attempted to dispute the reversal with Schwab, characterizing the transfer as related to an exchange for "property" in a chat session with a Schwab employee. Defendant's efforts were unsuccessful.

Defendant urged this Court to find that these transactions were merely the consummation of an agreement reached on October 25, 2019, which predated the Court's imposition of pretrial

Case 1:20-cr-00082-APM   Document 24   Filed 12/17/19   Page 5 of 16

United States v. Boutros                                                                                                                                 5

release conditions. At a hearing, Defendant, through her counsel, conceded that there was no direct evidence of such an agreement. Defendant maintained, however, that Paxful chat logs and the sequence of transactions leads to an inference that Defendant innocently believed that "RedWomen" was either J.S. or a broker to J.S., and that Defendant and "RedWomen" essentially agreed to a currency conversion between bitcoin and U.S. dollars. As a result of that agreement, Defendant maintains that she transferred funds to Paxos on October 25, 2019 and received payment through the wire transfer from J.S. without knowing the circumstances surrounding the transfer. Chat transcripts with "RedWomen" reveal that Defendant believed "RedWomen" was acting on behalf of J.S.

The Court finds that Defendant offered no evidence of an agreement predating October 28, 2019. Defendant, through her counsel, also conceded that Defendant did not seek prior approval from Pretrial Services. The Court therefore finds that there is clear and convincing evidence that Defendant's transfers of funds after October 28, 2019 were in violation of her conditions of release.

### B. Violations of Federal Law

On November 8, 2019, another judge of this Court authorized a search warrant for a package addressed to Defendant at her home address. The affiant for the search warrant, a United States Postal Inspector, believed that the sender from Dallas, Texas, was "a supplier from the Dark Web[,]" and that the package contained controlled substances. The seized package contained 70 "Soma" pills, a narcotic prescription drug also known as Carisoprodol, which is a Schedule IV controlled substance under the Controlled Substances Act. The Postal Inspector also noted that three additional parcels had been sent from the same Dallas, Texas sender to

Case 1:20-cr-00082-APM   Document 24   Filed 12/17/19   Page 6 of 16

United States v. Boutros                                                                                                   6

Defendant at her home address. The Government represented that these packages were sent on September 12, October 3, and October 23, 2019. The seized package reflected a date of November 5, 2019. Counsel for Defendant conceded that these three previous packages reached Defendant's apartment building but contested the inference that she actually received them. Counsel for Defendant also noted that Defendant is a recovering addict. On October 28, the Court ordered drug testing as a condition of pretrial release. Pretrial Services reported that the testing did not reveal a positive result for any substance. Carisoprodol, however, is not among the substances for which Pretrial Services tests. The Court finds that there is probable cause to believe that Defendant attempted to and conspired to possess controlled substances after October 28, 2019.

## IV. DISCUSSION

### A. The Court Finds, by Clear and Convincing Evidence, that Defendant Violated a Condition of Release

The Court finds that the evidence clearly and convincingly demonstrates that Defendant engaged in financial transactions over $1,000 without PSA approval after the Court ordered pretrial conditions of release prohibiting such transactions on October 28, 2019. The record reveals four post-October 28, 2019 transactions that are greater than $1,000, unrelated to child support or rent, and not approved by PSA: the $29,000 wire transfer from J.S. to Defendant, and three transfers of bitcoin from Defendant to "RedWomen" valued at $10,000, $10,000, and $9,000, respectively.

Defendant, through her counsel, argued that she did not know the circumstances surrounding the transfer from J.S. Whether she knew about "Jack Wilson" or anything else about J.S., Defendant clearly had knowledge of a wire transfer and intended to receive one,

which is why Defendant vociferously contested Schwab's reversal of J.S.'s wire transfer on November 7, 2019.  *See* Government's Motion, Exhibit A (ECF No. 10-2) at 2-5.

Defendant further argued that the transfer of bitcoin to "RedWomen" did not result in funds or anything of value being released to Defendant.  While the record is unclear as to whether "RedWomen" released funds to Defendant, this too qualifies as a "transaction."  *See* Transaction, Black's Law Dictionary (11th ed. 2019) (defining transaction as, *inter alia*, an "act or instance of conducting business or other dealings" or "[s]omething performed or carried out"). Defendant clearly intended to engage in these three transactions.  As the Paxful transaction records reveal, Defendant herself transferred the bitcoin to "RedWomen" on October 31, 2019.

Defendant offered no evidence of any agreement to make these transactions prior to Defendant's release on conditions.  Given the broad prohibition on "[a]ny financial transaction over $1,000" within the Court's order, each of these four transfers of funds or bitcoin clearly and convincingly violated pretrial release conditions.

Moreover, even if an agreement predated pretrial conditions of release (to be clear, the Court finds that no such agreement existed), that does not mean that the wire transfer from J.S. and the transfer of bitcoin to "RedWomen" were not financial transactions.  A prior agreement to make these financial transactions does not mean that these were not "act[s] or instance[s] of conducting business or other dealings."  Transaction, Black's Law Dictionary (11th ed. 2019). The Court therefore finds that there was no agreement, but even if there were one, the record clearly and convincingly establishes violations of conditions of release.

**B.  The Court Finds Probable Cause That Defendant Violated Federal Law**

The Court finds that the Government has established, by a probable cause standard, that Defendant violated federal law after the Court ordered pretrial conditions of release on October 28, 2019. Specifically, the Court finds that Defendant attempted to possess a controlled substance and conspired to possess a controlled substance in violation of 18 U.S.C. § 846. Defendant attempted to "knowingly or intentionally . . . possess a controlled substance." 21 U.S.C. § 844(a). Defendant also conspired to "knowingly or intentionally . . . possess a controlled substance." *Id.*

To meet its burden to show that Defendant conspired to possess a controlled substance in violation of her pretrial release conditions, the Government must show, by a probable cause standard, "a conspiracy to [possess] drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege any specific act in furtherance of the conspiracy." *United States v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999) (quoting *United States v. Sweeney*, 688 F.2d 1131, 1140 (7th Cir. 1982); *United States v. Eiland*, 738 F.3d 338, 358 (D.C. Cir. 2013) (requiring "an agreement between at least two people to violate [the Controlled Substances Act]"). The Government must show that Defendant entered the conspiracy knowingly and that Defendant had specific intent to further the conspiracy. *See United States v. Gaskins*, 690 F.3d 569, 577 (D.C. Cir. 2012).

To meet its burden to show that Defendant attempted to possess a controlled substance in violation of her pretrial release conditions, the Government must show, by a probable cause standard, that Defendant "purposely engaged in conduct that would constitute the crime if the attendant circumstances were as [Defendant] believes them to be . . . ." *United States v. Pair*, No. CR. 02-003 PLF-JMF, 2002 WL 554531, at *1 (D.D.C. Mar. 28, 2002) (quoting Model Penal Code § 5.01(1)(a) (1985)). Attempt requires a "'substantial step' towards commission of a

crime . . . performed with the requisite criminal intent." *United States v. Hite*, 769 F.3d 1154, 1162 (D.C. Cir. 2014).

As for the underlying crime which Defendant allegedly conspired or attempted to commit, the Government must show that Defendant conspired or attempted to "knowingly or intentionally . . . possess a controlled substance[.]" 21 U.S.C. § 844(a). Possession can be "either actual or constructive in that the accused is in position to exercise dominion and control over the contraband." *United States v. Smith*, 520 F.2d 74, 76 (D.C. Cir. 1975) (quoting *Miller v. United States*, 347 F.2d 797, 799 (D.C. Cir. 1965). Defendant's knowledge can be proven "by showing that the defendant knew he possessed a substance listed on the schedules, even if he did not know which substance it was." *McFadden v. United States*, 135 S. Ct. 2298, 2304 (2015). Alternatively, knowledge can be proven "by showing that the defendant knew the identity of the substance he possessed." *Id.*

Based on this Court's factual findings, it is a reasonable inference that Defendant communicated with an unknown third party to send controlled substances to her home address, and that she received and possessed those substances. It is a further reasonable inference that Defendant ordered the package containing Carisoprodol after the Court ordered pretrial release conditions on October 28, 2019, because the package reflects a sending date of November 5, 2019. The package was the subject of an online transaction. Given that orders for online goods can be made and communicated instantaneously, it is reasonable to infer that Defendant made the order less than a week before the package was shipped. Further, Defendant admits that she is a recovering addict. While the Court sympathizes with Defendant's struggle and does not seek to punish her for her forthcoming admission, this fact makes it more likely that she intentionally ordered the package instead of anyone else.

Defendant, through her counsel, suggested that it is just as plausible that Defendant's ex-husband could have made the order to affect ongoing custody proceedings. This theory, however, is implausible. If someone were to try to essentially frame Defendant, it might make sense for them to make one order and alert authorities to it. However, the record reveals four similar transactions and the seized package was searched after a Postal Inspector indicated it was suspicious, not by an anonymous tip. Defendant also suggested that it is just as plausible that drug suppliers used Defendant's apartment complex as a location from which they could pick up the packages. Defendant noted that drug traffickers often use abandoned houses or fictitious names as recipients for packages. In this case, however, Defendant's real name and address were on the package. The most plausible explanation is that she intended to and did receive the previous packages, and intended to receive the last package before it was seized.

The Court therefore concludes that Defendant entered into a conspiracy with another person to possess a controlled substance. *See Eiland*, 738 F.3d at 358. While there is no written or oral agreement in the record, the course of conduct between Defendant and an unknown third-party evinces an agreement between September 12, 2019 and November 5, 2019, to possess Carisoprodol, a Schedule IV controlled substance. Defendant's act of ordering and the supplier's shipment furthered the object of the conspiracy, for Defendant to "knowingly or intentionally . . . possess a controlled substance." 21 U.S.C. § 844(a). The Court finds that the evidence warrants the inference that Defendant "knew the identity of the substance [s]he possessed" because the Court concludes that it is more likely than not that Defendant herself ordered the substances and indicated what she wanted to the supplier. *McFadden*, 135 S. Ct. at 2304.

The Court also concludes that there is probable cause to believe that Defendant attempted to possess controlled substances because she "purposely engaged in conduct that would

constitute the crime if the attendant circumstances were as [Defendant] believes them to be . . . ." *Pair*, 2002 WL 554531, at *1 (citation omitted). Defendant took a "substantial step" in furtherance of possession by ordering the package from the third-party supplier after the Court entered pretrial conditions of release. *Hite*, 769 F.3d at 1162. Defendant also evinced the specific intent to possess the package by ordering the package directly to her apartment. *See id.*

## C. No Condition or Combination of Conditions of Release Will Assure that Defendant Will Not Pose a Danger to the Safety of Any Other Person or the Community

### 1. Defendants' Unmonitorable Financial Transactions Pose a Danger to the Community

To the Government, Defendant's transactions reveal fraud or, at the very least, illegitimate transactions which reveal that Defendant poses a serious risk to the public while on pretrial release. At the December 9, 2019 hearing, the Government declined to pursue revocation of pretrial conditions on the basis of the violation of fraud laws, but the Government still argues that these transactions are not as legitimate as Defendant maintains. The Government primarily points to chat transcripts on November 7, 2019 between a Charles Schwab employee and Defendant where she was less than forthcoming about the nature of the transaction with precipitated the $29,000 wire transfer. She characterized the wire as payment for "property" for J.S. and said little else. Defendant maintains that these transactions were merely a "currency exchange" and that Defendant herself was defrauded through the course of these transactions.

The legitimacy of these transactions may be unclear, but the harm to the public is the type the Court sought to avoid in ordering Defendant not to engage in financial transactions over $1,000. J.S., a retiree in South Carolina apparently suffering from Parkinson's Disease, was defrauded. The Court entered a broad condition encompassing "any" financial transaction over

$1,000 because the crimes of which Defendant has been accused involved defrauding people through a complicated series of bank transfers. The primary purpose of the Court's condition was to protect the public[1] and the public was harmed by the violations of release conditions. The record does not warrant a finding that Defendant intentionally defrauded J.S., but does reveal recklessness by Defendant not verifying J.S.'s identity, memorializing any agreement, or doing anything to assure these transactions were above board. This recklessness led to the harm the Court sought to avoid. Based on these circumstances and the factors outlined in 18 U.S.C. § 3142(g), there is no condition or combination of conditions of release that will assure that Defendant will not pose a danger to the community.

The nature and circumstances of the charged offense and the violations of pretrial release conditions weigh in favor of detention. *See* 18 U.S.C. § 3142(g)(1). While Defendant's actions are nonviolent, the harms to the victims of the underlying offenses and J.S. are great.

The weight of the evidence for the charged offenses and the violations of pretrial release conditions weighs slightly in favor of detention. *See* 18 U.S.C. § 3142(g)(2). Neither the Government nor Defendant addressed the weight of the evidence concerning the underlying criminal complaint, and the Court has no basis to conclude whether the weight of the evidence is strong or weak for those alleged offenses. The Court has already noted, however, that the evidence concerning the violation of release conditions was clear and convincing. This weighs slightly in favor of detention.

The history and characteristics of the Defendant weigh in favor of detention. *See* 18 U.S.C. § 3142(g)(3). These transactions took place mere days after Defendant acknowledged her pretrial conditions of release in open court. The closeness in dates between the Court's order and

---

[1] As Defendant, through her counsel, noted during hearings, another concern was whether Defendant would dissipate funds. The Court does not find that Defendant sought to dissipate funds.

Defendant's transactions reveals a disregard for any conditions the Court might further impose. Further, Defendant has a pattern of complicated and harmful financial transactions, including the conduct alleged in the complaint, the violations of pretrial release conditions, and the apparent purchase of controlled substances from the dark web. While Defendant's history does not include a criminal record, this pattern leads the Court to believe there is a real risk of future, similar, transactions.

The nature and seriousness of the danger to the community also weigh in favor of detention. *See* 18 U.S.C. § 3142(g)(4). As previously noted, the harm to J.S. was substantial. So too was the harm alleged in the underlying complaint. There is a serious danger to members of the community of future, similar conduct.

The only condition assuring that Defendant would not engage in any other similar transactions in the future would be the strict restriction and monitoring of her internet and bank activity. The Pretrial Services Agency in this District does not have the ability to monitor Defendant's bank accounts or internet activity. The Court therefore finds that "there is no condition or combination of conditions of release that will assure that [Defendant] will not . . . pose a danger to the safety of any other person or the community[.]" 18 U.S.C. § 3148(b)(2)(A).

### 2. Defendant's Violations of Federal Law Also Weigh in Favor of Detention

There is probable cause to believe that Defendant attempted and conspired to possess a controlled substance. *See* 21 U.S.C. §§ 844(a), 846. These crimes are misdemeanors under federal law, so there is no presumption that "no condition or combination of conditions will not

Case 1:20-cr-00082-APM   Document 24   Filed 12/17/19   Page 14 of 16

United States v. Boutros                                                                                                                    14

pose a danger to the safety of any other person or the community."[2]  18 U.S.C. § 3148. Defendant's violations of law nonetheless weigh in favor of detention.

       The nature and circumstances of the charged offense and the violations of law while on release weigh in favor of detention.  *See* 18 U.S.C. § 3142(g)(1).  Both reveal that Defendant has the capability to evade any condition of release by engaging in convoluted transactions that are hard to trace.  While possession is a non-violent misdemeanor, the sophistication Defendant has displayed in ordering drugs from the dark web weighs in favor of detention.

       The weight of the evidence for the charged offense and the violations of law while on release weighs neither weigh in favor of or against detention.  *See* 18 U.S.C. § 3142(g)(2).  As previously noted, neither the Government nor Defendant addressed the weight of the evidence concerning the underlying criminal complaint, and the Court has no basis to conclude whether the weight of the evidence is strong or weak for those crimes.  Moreover, the Government only succeeded in establishing probable cause that Defendant attempted and conspired to possess a controlled substance.  This is not a particularly high bar, so the weight of the evidence is not strong.

       The history and characteristics of the Defendant weigh in favor of detention.  *See* 18 U.S.C. § 3142(g)(3).  Taken in conjunction with her violations of conditions of pretrial release, Defendant has a pattern of complicated and harmful financial transactions including the conduct alleged in the complaint, the violations of pretrial release conditions, and the apparent purchase of controlled substances from the dark web.  While Defendant's history does not include a criminal record, this pattern leads the Court to believe there is a real risk of future, similar, violations of the law.

---

[2] The Court indicated that the presumption did, in fact, apply during the December 11, 2019 hearing.  The Court now strikes the error.

Case 1:20-cr-00082-APM   Document 24   Filed 12/17/19   Page 15 of 16

United States v. Boutros                                                                                                                15

The nature and seriousness of the danger to the community weight slightly in favor of detention.  *See* 18 U.S.C. § 3142(g)(4).  There is no evidence that Defendant sought to distribute controlled substances.  The only danger implicated by Defendant's conduct is her financial support of the third-party supplier's apparent criminal conduct.

The only condition assuring that Defendant would not engage in any other similar transactions in the future would be the strict restriction and monitoring of her internet activity combined with drug testing for a broad spectrum of potential drug use.  As previously noted, the Pretrial Services Agency in this District does not have the ability to monitor Defendant's internet activity.  The Court therefore finds that "there is no condition or combination of conditions of release that will assure that [Defendant] will not . . . pose a danger to the safety of any other person or the community[.]"  18 U.S.C. § 3148(b)(2)(A).  The Court notes that Defendant's counsel sought to ask Pretrial Services whether it was possible that they could regularly test for Carisoprodol or whether Defendant could seek drug treatment as an alternative condition of release.  The Court finds that, even if both conditions were possible, Pretrial Services would still be in an untenable situation of having to test for the unknowable.  Defendant appears to be a sophisticated drug user.  The Court cannot ensure that she would not use the dark web to order similar substances to evade any future drug testing.  As a result, there is no condition or combination of conditions that would assure the safety of the community.  *See id.*

Case 1:20-cr-00082-APM   Document 24   Filed 12/17/19   Page 16 of 16

United States v. Boutros                                                                                                    16

## V. CONCLUSION

On the basis of the foregoing findings of fact and reasons, Defendant will be held without bond pursuant to the December 11, 2019 Order of Detention.

DEBORAH A. ROBINSON  
United States Magistrate Judge

December 17, 2019  
DATE