UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Criminal No. 20-cr-00082 (APM) |
| TRICIA STEELE BOUTROS, : | |
| : | |
| Defendant. : | |

## UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. Based on the arguments set forth below, and those that may be made at the sentencing hearing, the Government requests that the Court impose a sentence of incarceration between 78 and 97 months, consistent with the United States Sentencing Guidelines, and the plea agreement between the parties.[1] Beginning in 2016 and continuing even after her arrest in October 2019, the defendant committed bank fraud involving transactions, attempted or realized, exceeding $3.5 million. Approximately 202 individuals and 51 financial institutions were negatively affected by her conduct. The victim impact associated with the extraordinary volume and complexity of transactions, coupled with the egregious abuse of her power as a licensed attorney, support the imposition of the requested Guidelines sentence. The Government also respectfully requests the court enter an order requiring the defendant to pay $2,195,022.77 in restitution and to forfeit the same amount to the government (offset against the seized assets), consistent with the plea agreement between the parties.

---

[1] Throughout this memorandum, the Government refers to the United States Sentencing Commission, Guidelines Manual (2018) as the "Sentencing Guidelines" or "Guidelines."

1

## I.   Procedural Background

On April 29, 2020, the Government filed a one-count Information charging the defendant with one count of bank fraud, in violation of 18 U.S.C. § 1344, alleging that between October 2016, and in or about November 2018, the defendant participated in a scheme to defraud financial institutions, including JPMorgan Chase Bank, and to obtain money, funds credits, assets, securities and other property owned by and under the custody of the financial institutions. On May 1, 2020, the defendant pled guilty to the Information. The defendant's sentencing hearing is scheduled for September 25, 2020.

## II.   Factual Background

Beginning in 2016 and continuing through her arrest in October 2019, the defendant committed bank fraud involving transactions, attempted or realized, exceeding $3.5 million. The Statement of Offense does not detail the full extent and nature of the defendant's conduct. The investigation has revealed that the defendant's fraud against banks and using stolen personal identifying information was expansive, undertaken with significant planning, and harmed not only financial institutions but also numerous individuals whose financial security was compromised.

The parties have agreed that the Statement of Offense (ECF No. 39) includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to either party and is not intended to be a full enumeration of all the facts surrounding the defendant's case (ECF No. 38 at ¶6). Consistent with the Sentencing Guidelines, attached is a declaration of Federal Bureau of Investigation (FBI) Special Agent Cassidy T. Smith containing additional information and attachments relevant to the Court's

determination of the defendant's sentence (Exhibit A, or the "Smith Declaration").[2]

As set forth in the Smith Declaration, the defendant participated in multiple complex bank fraud schemes, using stolen personal identifying information, which included unauthorized ACH transfers (Ex. A, ¶ 10-15); the extensive use of fraudulent checks (Ex. A, ¶¶ 16-17); and setting up fraudulent accounts at financial institutions (Ex. A, ¶¶ 18-22). Egregiously, the defendant abused her law license and used the cover of a fake law firm to facilitate these schemes (Ex. A, ¶ 24-27). She utilized the talent of known computer hackers to further her criminal enterprise, including one whom she knew is on the FBI's most wanted list and a fugitive from justice (Ex. A, ¶¶ 6, 28-31). The defendant's collaboration with computer hackers is illustrative of the sophistication of her criminal pursuits, and not altogether unsurprising given her advanced education. The defendant's identity theft victims, of which only a representative sample is highlighted in the Smith Declaration, could face ongoing harm for years to come (Ex. A, ¶¶ 7, 36-38). The defendant even established a fake foundation to defraud her victims (Ex. A, ¶¶ 5, 39-40). The defendant's criminal activity was so brazen it did not stop with her arrest, and there is evidence that she has not been compliant with her current release conditions (Ex. A, ¶¶ 47-48).

In sum, all evidence indicates that starting in 2016, the defendant effectively gave up any

---

[2] *See* U.S.S.G. §6A1.3 (Commentary); *United States v. Benkahla*, 530 F.3d 300, 312 (4th Cir. 2008) ("Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence, so long as th[e] Guidelines sentence is treated as advisory and falls within the statutory maximum authorized by the jury's verdict"); *United States v. Haji Bagcho*, 923 F.3d 1131,1140 (D.C. Cir. 2019) ("[A] sentencing judge may consider uncharged or acquitted conduct proved by preponderance of the evidence provided the sentence does not exceed the statutory maximum or increase the statutory mandatory minimum"); *United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004) ("The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the [Presentence Investigation Report], or evidence presented during the sentencing hearing.").

legitimate law practice, and instead devoted all her time and resources to her criminal enterprise, to enrich herself at the expense of others. She did this knowingly and willfully; there is a complete lack of evidence to suggest that she was victimized or manipulated by the hackers with whom she collaborated. To the contrary, the defendant's own records, and communications, many of which are included as attachments to the Smith Declaration, make clear that she spearheaded her sophisticated fraud schemes.

## III. Applicable Guidelines Range

The parties, and the United States Probation Office, agree that after taking into account the defendant's acceptance of responsibility, the defendant's total offense level under the Sentencing Guidelines is 28. With no criminal history, the defendant's Guidelines range is 78 to 97 months' incarceration.

This calculation includes a two-level enhancement because the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). The application notes define "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Here, the sophisticated means the defendant used included buying personal identifying information off computer hackers on the Dark Web, and the use of what were, as a practical matter, shell companies (Steele Legal PLCC and the Women's Truth and Justice Foundation) (ECF No. 39, ¶¶ 2 and 5).

The parties have also agreed that the defendant reserves the right to argue at sentencing for a downward departure pursuant to U.S.S.G. § 5H1.3 (Mental and Emotional Conditions) and/or § 5K2.13 (Diminished Capacity), should the defendant's mental and/or emotional health be

4

professionally evaluated between entry of the plea and sentencing (ECF No. 38, ¶ 4). On September 12, 2020, the Government was provided with an evaluation of the defendant that was conducted between entry of the plea and sentencing.

"[D]epartures based upon a defendant's mental condition [pursuant to § 5H1.3] are discouraged, which means that the sentencing court must first make a finding that the mental condition is extraordinary or atypical" *United States v. Maldonado-Montalvo*, 356 F.3d 65, 74 (1st Cir. 2003) (internal citations omitted). A defendant's need for treatment, or psychiatric help, acting alone, is not an adequate ground for departure. *See United States v. Doering*, 909 F.2d 392, 394-95 (9th Cir.1990). This is especially true where a defendant shows improvement once placed on anti-depressant or anti-anxiety medications. *Maldonado-Montalvo*, 356 F.3d at 75 (1st Cir. 2003); *see also United States v. Peterson,* 225 F.3d 1167, 1171 (10th Cir.2000).

Here, a departure for suicidal tendencies would be inappropriate, as the Bureau of Prisons is legally charged with providing adequate facilities and programs for suicidal inmates. *See* 28 C.F.R. § 552.41 (1991), *United States v. Harpst*, 949 F.2d 860, 863 (6th Cir. 1991). Moreover, arrest, or sentencing-induced anxiety or depression is the natural consequence of being charged with a criminal offense and is also not a basis for a Guidelines departure. *See United States v. Walker*, 27 F.3d 417, 418–19 (9th Cir.1994); *Maldonado-Montalvo*, 356 F.3d at 75 (1st Cir. 2003).

The Government agrees with the Probation Office that the § 5K2.13 Diminished Capacity departure does not apply to the defendant because, to the extent the defendant had any reduced mental capacity during the commission of the offense, it was caused by the voluntary use of drugs or other intoxicants. During the offense period (and continuing after her arrest), the defendant spearheaded a complex and sophisticated scheme, with little to suggest that she had any

5

significantly reduced medical capacity as would be required for this departure.

**IV.  Restitution and Forfeiture**

   a.  Restitution

Bank Fraud is "an offense against property under this title [Title 18]," and thus restitution is governed by the Mandatory Victims Restitution Act. 18 U.S.C. § 3663A. In the plea agreement, the parties agree that the victims in this case suffered a pecuniary loss of between $1.3 million and $2.2 million (ECF No. 38 ¶ 10). As set forth in the Smith Declaration, and the Presentence Report, a preponderance of the evidence supports a restitution order of $2,195,022.77, reflecting loss associated with the following victims and amounts.

| Victim | Loss Amount |
|---|---|
| P.C. | $42,000.00 |
| Blue Pay | $598,965.00 |
| BB&T | $378,545.00 |
| Plooto Inc. | $186,270.00 |
| N.D. | $5,727.00 |
| JPMorgan Bank for accounts associated with Victim H.S. | $19,433.85 |
| JPMorgan Bank for accounts associated with Victim A.S. | $7,024.00 |
| JPMorgan Bank for accounts associated with Victim S.D. | $22,580.00 |
| JPMorgan Bank for accounts associated with Victim R.J. | $2,675.00 |
| JPMorgan Bank for accounts associated with Victim H.S.G. | $52,296.95 |
| JPMorgan Bank for accounts associated with Victims A.E. and H.E. | $118,000.00 |

| Victim | Loss Amount |
|---|---:|
| JPMorgan Bank for accounts associated with Victim Y. X. | $65,565.56 |
| JPMorgan Bank for accounts associated with Victim I.H.T.W. | $30,748.29 |
| JPMorgan Bank for accounts associated with Victim E.S. | $12,150.00 |
| JPMorgan Bank for accounts associated with M.A. | $5,837.12 |
| JPMorgan Bank for accounts associated with Victim S.S. | $4,101.14 |
| Additional JPMorgan Bank Intrusions[3] | $683,159.66 |
| Coin Café | $31,675.00 |
| TOTAL | $2,195,022.77 |

The Presentence Report identifies additional entities that may be victims of the defendant's conduct; the list of potential victims provided to the Probation Office included other financial institutions. The above list reflects the government's best efforts to identify the victims whose loss is supported by a preponderance of the evidence at the time of this filing and during plea negotiations with the defendant. On September 16, 2020, the Government received a Victim Impact Statement by email from Bank of America, containing a letter from Bank of America dated August 27, 2020. A copy is attached as Exhibit B. Bank of America is requesting restitution in the amount of $24,642.92. The account Bank of America identifies as associated with their loss belonged to the defendant.

    b. Forfeiture

---

[3] As noted in the Smith Declaration, these are losses not otherwise accounted for by the specific victim accounts discussed in the Declaration.

The parties have agreed that the defendant shall forfeit to the United States an amount between $1.3 million and $2.2 million, less the value of seized assets identified in the plea agreement (ECF No. 38 ¶ 11). The total value of the seized assets is $496,054.41, as follows:

| Asset Description | Asset ID Number | Value |
| --- | --- | --- |
| Funds seized from Wealthfront account | 20-FBI-002099 | $7,842.40 |
| Funds seized from Mercury account | 20-FBI-002101 | $7,141.81 |
| Funds seized from Apex Clearing account | 20-FBI-002104 | $34,863.66 |
| Funds seized from Morgan Stanley account(s) | 20-FBI-002105 | $253,564.53 |
| Funds seized from Charles Schwab account(s) (three checks) | 20-FBI-002115 | $131,538.45 |
| Funds seized from Charles Schwab account(s) | 20-FBI-002117 | $28,034.56 |
| Value of Volvo, post-liquidation | 19-FBI-007033 | $33,059.00 |

As discussed in the Smith Declaration, the victim losses in this matter were the defendant's gain: money were siphoned from both legitimate and fraudulent bank accounts into accounts under the defendant's control. Accordingly this Court should enter a money judgment in the amount of $1,698,968.36, reflecting the difference between the property constituting or derived from proceeds the Defendant obtained directly or indirectly as a result of the offense in Count One ($2,195,022.77) and the net value of the forfeited assets ($496,054.41). A proposed order of forfeiture is attached as Exhibit C.

## V.    Fine

The Presentence Investigation Report states that the defendant does not appear to have the ability to pay a fine (ECF No. 46). The Government notes that the defendant's financial disclosures to the Probation Office have had inconsistencies. Specifically, the defendant disclosed additional accounts to the Probation Office after discussions with the Government following receipt of the

draft Presentence Report.  Evidence also indicates that the defendant recently accessed a cryptocurrency account held at Coin Café (Ex. A, ¶ 48).

## VI.     A Guidelines Sentence is Sufficient and not Greater than Necessary

"As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for a sentencing determination. *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Cano-Flores*, 796 F.3d 83, 90 (D.C. Cir. 2015) ("[T]he first step for the sentencing court is to calculate the [Sentencing Guidelines] range"). While 18 U.S.C. § 3553(a) instructs the Court to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth" in 18 U.S.C. § 3553(a)(2), the defendant's Guidelines range is one factor the Court must consider in determining an appropriate sentence. 18 U.S.C. § 3553(a)(4).

In order to determine such a sentence, the Court, after accurately calculating the defendant's advisory Guidelines range, considers the various factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to promote respect for the law, just punishment, and adequate deterrence. 18 U.S.C. § 3553(a). The United States submits that in this case, in light of such factors, a Guidelines sentence is appropriate.

First, the defendant's particular history and characteristics support a sentence within the Guidelines range. The defendant is a licensed attorney and abused her law license to establish a fake law firm to perpetuate to fraud. She knew that her status as an attorney afforded her special privileges when opening up bank accounts and taking out lines of credit. She went so far as to use

9

her law license to access sensitive background information in furtherance of her schemes to defraud. *See, e.g.*, Attachment A20 ("…my bar license gives me access to a background check so I can see all their addresses and everything about them"). This Court has long recognized that it must be "stern in demanding the highest standards of character and morality from its attorneys." *In re Williams*, 158 F. Supp. 279, 281 (D.D.C 1957). A Guidelines sentence is the appropriate way to recognize that as an attorney, the defendant knew she should have conducted herself with the highest level of integrity, but she intentionally failed to do so.

Second, the nature and circumstances of the offense support a sentence within the Guidelines range. As set forth at length in the Statement of Offense and Smith Declaration, the defendant illegally accessed dozens of bank accounts, from at least 10 different banks in furtherance of her scheme. She enlisted the help of unscrupulous hackers to obtain personal identifying information, and generate counterfeit documents, and then used the information and documents to perpetuate her fraud over a multi-year timeframe. In doing so, she caused significant damage to those individuals and businesses whose names and information she appropriated for her own gain. The victims of her bank fraud include financial institutions left holding the bag after making victim account holders whole. *See e.g.,* Exhibit D (BB&T Victim Impact Statement) and ECF No. 47 (Plooto Inc. Victim Impact Statement). Unlike many bank fraud schemes, however, the harm was not limited to financial institutions; families were also robbed of their life savings. For example, one victim, "P.C.," lost the contents of her mother's entire retirement account after unauthorized transfers from her JPMorgan Chase Bank were made to Steele Legal. *See* Exhibit E ("P.C." Victim Impact Statement). The damage caused by the defendant's conduct cannot be overstated. Without question she negatively impacted the lives of dozens of people and institutions,

10

and continued to do so even after being arrested and charged.

While investigating a possible violation of the conditions of her current release, law enforcement discovered that the defendant, doing business as Steele Legal, had previously made approximately 21 orders through Coin Café via ACH transfers to purchase Bitcoin, a cryptocurrency. After the defendant placed the orders, seven of her orders were charged back, resulting in a loss of $31,675 to Coin Café during the bank fraud scheme. Coin Café was accessed using IP addresses that resolved to the defendant's former address in Washington, D.C. *See* Exhibit F (Coin Café Victim Impact Statement) and Smith Declaration ¶ 48.

Finally, general deterrence is a "crucial factor in sentencing decisions for economic . . . crimes," such as this one. *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015). The legislative history of section 3553 documents Congress's emphasis on the importance of general deterrence in white collar crime. *See* S. REP. 98-225, 76, 1984 U.S.C.C.A.N. 3182, 3259 (need to deter others is "particularly important in the area of white collar crime"). "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citations omitted). A Guidelines sentence will provide deterrence to others, including other attorneys, who might find themselves tempted to commit fraud.

## VII. Conclusion

Accordingly, for the reasons stated above, the Government respectfully requests that the Court impose a sentence of between 78 and 97 months of incarceration, enter the proposed order of forfeiture, and order that the defendant pay restitution in the amount of $2,195,022.77.

11

                MICHAEL SHERWIN
                Acting United States Attorney for the
                District of Columbia

By:    /s/ *Elizabeth Aloi*
        Elizabeth Aloi
        Assistant United States Attorney
        Public Corruption and Civil Rights Section
        555 Fourth Street, NW, 5th Floor
        Washington, DC 20530
        (202) 695-0610

**Certificate of Service**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing motion has been sent to counsel for the defendant on September 16, 2020.

*/s   Elizabeth Aloi*
Elizabeth Aloi
Assistant United States Attorney