**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Criminal No. 20-cr-00082 (APM)** |
| **TRICIA STEELE BOUTROS,** | : | |
| | : | |
| **Defendant.** | : | |

**REPLY BRIEF IN SUPPORT OF THE
UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

The defendant, Tricia Steele Boutros, admits to defrauding or intending to defraud victims of over $3,500,000 (ECF No. 38, § 37). The parties agree that the Sentencing Guidelines in this case support a term of incarceration of 78 to 97 months (ECF No. 38 § 4). Consistent with the Sentencing Guidelines, and the plea agreement between the parties, this Court should impose a sentence of between 78 and 97 months' incarceration. The defendant has failed to establish that a departure pursuant to either U.S.S.G. § 5H1.3 or § 5K2.13 is warranted, or that the considerations set forth in 18 U.S.C. § 3553(a) support a lower sentence.

**I.     The Letters of Support for the Defendant Demonstrate that a Departure is Inappropriate Under U.S.S.G. § 5H1.3**

Mental and emotional conditions are not ordinarily relevant in determining whether sentence should be outside the guidelines. *United States v. Prestemon*, 929 F.2d 1275 (8th Cir. 1991); *see also United States v. Johnson* 979 F.2d 396 (6th Cir. 1992). The defendant's own sentencing memorandum demonstrates that she has thrived since being incarcerated, and that a departure is not necessary to obtain treatment or rehabilitation services. She's been sober and drug free (ECF No. 53, page 18). She's been "caring, loving and helpfull" [sic] to the other inmates

1

(ECF No. 53, page 19). She listens to others. She participates in bible study and plays cards (ECF No. 53, page 18). She is supportive to those around her (ECF No. 53, page 19). Where a defendant shows such marked improvement, mental illness does not provide basis for a downward departure. *See United States v. Maldonado-Montalvo*, 356 F.3d 65 (1st Cir. 2003). The defendant's progress while incarcerated undercuts the recommendations presented by her own forensic psychologist and highlights the impact of the defendant's admitted substance abuse on her behavior.

## II.     A Departure Pursuant to U.S.S.G § 5K2.13 is Not Supported by the Evidence

The defendant does not and did not have a significantly reduced mental capacity while committing the offense. "Significantly reduced mental capacity," as required for a departure under § 5K2.13 means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful. U.S.S.G § 5K2.13, comment. (n.1). The defendant fully admits the wrongfulness of her conduct (ECF No. 53 page 28). The defendant asks the Court to apply this departure because she could not control her behavior (ECF No. 53, page 51). This flies in the face of the nature of the offense. The defendant's bank fraud was not a crime of impulse, or passion. It was a multi-year scheme that required significant planning and calculation. In such cases, a departure for reduced mental capacity is not warranted. *See United States v. Sammoury*, 74 F.3d 1341, 1346 (D.C. Cir. 1996) (Record of significant spousal abuse not a basis for a departure where the offense [bank fraud] was "long range," "calculated" and "required extensive planning."). The defendant has failed to refute the Probation Office's conclusion that the § 5K2.13 Diminished Capacity departure does not apply to the defendant because, to the extent the defendant had any reduced mental capacity during the commission of

the offense, it was caused by the voluntary use of drugs or other intoxicants.

### III.   The Factors Set Forth in 18 U.S.C. § 3553(a) Support a Guidelines Sentence

#### a.   The COVID-19 Pandemic Does Not Provide A Basis for Sentencing Mitigation

In response to the COVID-19 pandemic, the Bureau of Prisons has taken significant measures to protect the health of the inmates in its charge. For example, every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms. Asymptomatic inmates with risk of exposure are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates.

The four circumstances that satisfy the "extraordinary and compelling" reasons that warrant a sentence reduction under 18 U.S.C. § 3582(c) provide a helpful lens through which to assess what the impact of the COVID-19 pandemic should be on the defendant's term of incarceration.[1] They are: (1) "the medical condition of the defendant, who is suffering from a terminal illness or has chronic and "substantially diminish[ed] ... ability ... to provide self-care within the prison environment; (2) the defendant is at least 65 years old, with a serious deterioration in physical or mental health[. . .]; (3) [f]amily [c]ircumstances of [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or the incapacitation of the

---

[1] Title 18, United States Code, Section 3582(c) includes a narrow exception, commonly referred to as "compassionate release," to the rule of finality in federal sentences.

defendant's spouse or registered partner […];  and (4) [o]ther [r]easons found by the BOP Director to present an extraordinary and compelling  reason […]" in the defendant's particular case.  *United States v. Bikundi*, No. CR 14-30-2 (BAH), 2020 WL 3129018, at *3 (D.D.C. June 12, 2020) (internal citations omitted).  None of these circumstances apply to the defendant. If the defendant were presently incarcerated it is unlikely  the COVID-19 pandemic would justify a reduction of her sentence.  Accordingly,  the pandemic is not a reason for this Court to impose a lower sentence than would have been imposed  absent the pandemic.

### b.  A Sentence of Time Served Would Promote Sentencing Disparities

The defendant is misguided  to argue that the imposition  of a guidelines  sentence in this matter would result in sentencing disparities.  The advisory Sentencing Guidelines  promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring  similar sentences for those who have committed  similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2006). The defendant admits to engaging  in a complex bank fraud scheme that took place over a three-year time frame. She impacted  more than 200 account holders at more than 50 financial institutions.  She caused millions  of dollars  in losses.  She used her position  as a licensed attorney to facilitate  her fraud scheme. This is not a crime for which a sentence of time served is appropriate.  Notably, the reason Ms. Boutros has served time is because she egregiously violated  the conditions  of her pretrial release. The defendant's claim that she is at low risk for recidivism  flies in the face of the facts of this case: Ms. Boutros, after being charged, arrested, and appearing  before the Court, engaged in additional  felonious activity.

The defendant also fails to identify  any law to support a sentence of time served. The defendant cites to *United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008) for the proposition  that a

4

variation is warranted because her conduct was aberrant or not an "isolated mistake." (ECF No. 53 at 31). The *Howe* defendant participated in a single incident of procurement fraud and had no history of substance abuse. Here, the defendant, with a history of substance abuse, engaged in a bank fraud scheme that spanned several years and included hundreds of transactions. The crimes are not comparable. The defendant excuses her behavior by implying it was her only option to see her children (ECF No. 53, page 32). This presents a false dichotomy between a life of crime and motherhood. *See United States v. Sammoury*, 74 F.3d 1341, 1346 (D.C. Cir. 1996) ("finding incredulous the defendant's statement that she had no other options than to steal from her employer; abuse did not provide a basis for duress or coercion").

### c.  Forfeiture and Restitution

The defendant has admitted to bank fraud resulting in loss or intended loss of $3,500,000. Each of the victims identified in the Government's sentencing memorandum had money siphoned from their accounts to accounts under the control of the defendant and all evidence, including the defendant's own accounting, points to the defendant's responsibility for this conduct. In our sentencing memorandum, the Government proposed a restitution amount of $2,195,022.77 but inadvertently failed to include in that total the loss associated with victims H.S. and H.S.G. The actual aggregate loss for the victims identified in the Government's sentencing memorandum is $2,266,753.57. As discussed in the Smith Declaration, loss associated with transactions at Coin Café, and certain JPMorgan Chase Bank account intrusions, included in that total, was discovered after the defendant entered her guilty plea. The Mandatory Victims Restitution Act requires this Court to order the defendant to make restitution to the victims of her offense.

### IV.  Conclusion

Accordingly, for the reasons stated above, the Government respectfully requests that the Court impose a sentence of between 78 and 97 months of incarceration.

MICHAEL SHERWIN
Acting United States Attorney for the
District of Columbia

By:    /s/ *Elizabeth Aloi*
Elizabeth Aloi
Assistant United States Attorney
Public Corruption and Civil Rights Section
555 Fourth Street, NW, 5th Floor
Washington, DC 20530
(202) 695-0610

**<u>Certificate of Service</u>**

I certify that, by virtue of the Court's ECF system, a copy of the foregoing motion has been sent to counsel for the defendant on September 21, 2020.

*/s   Elizabeth Aloi*
Elizabeth Aloi
Assistant United States Attorney