UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | Criminal No. 20-cr-0082 (APM) |
| **TRICIA STEELE BOUTROS,** | ) ) ) | |
| **Defendant.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

On October 5, 2020, the court entered judgment against Defendant Tricia Steele Boutros after she pleaded guilty to one count of bank fraud under 18 U.S.C. §§ 1344(1) and (2). As part of her plea agreement, Ms. Boutros agreed that the victims in this case suffered an actual pecuniary loss of at least $1.3 million and no more than $2.2 million,[1] and she agreed to forfeit a money judgment within that range. *See* Presentence Investigative Report, ECF No. 45, at 4. The parties, however, disputed the actual loss amount. As a consequence, at sentencing, the court ordered Ms. Boutros to forfeit a money judgment of not less than $1.3 million, *see* Judgment, ECF No. 66, but left open the final forfeiture order, as permitted by Rule 32.2(b)(2)(C) of the Federal Rules of Criminal Procedure. The court also deferred entering a final restitution order, as allowed by 18 U.S.C. § 3664(d)(5). The court requested, and received, further briefing from the parties on the actual loss amount. *See* United States' Suppl. Mem. in Supp. of Restitution, ECF No. 68 [hereinafter Gov't's Mem.]; Resp. in Opp'n to the Gov't's Suppl. Mem. in Supp. of Restitution, ECF No. 69 [hereinafter Def.'s Resp.].

---

[1] Ms. Boutros agreed to a higher intended loss amount of $3.5 million.

The United States initially asserted an actual loss of $2,266,753.57. *See* Reply Br. in Supp. of the United States' Mem. in Aid of Sentencing, ECF No. 57, at 5. It therefore sought a restitution order at the top of the agreed-upon range, $2.2 million, *see id.*, and a money judgment in the amount of $1,703,945.59, which represented the full loss amount minus the value of cash assets seized from Ms. Boutros ($496,054.41) ($2,200,000 – $496,054.41 = $1,703,945.59), *see* United States' Mem. in Aid of Sentencing, ECF No. 52, at 7–8. In its supplemental filing, the United States revised the actual loss amount slightly downward to $2,254,076.57, which does not change the restitution or money judgment amounts sought since it still exceeds the agreed-upon $2.2 million cap. Gov't's Mem. at 3; *id.*, Ex. A, Decl. in Supp. of Restitution, ECF No. 68-1 [hereinafter Frazier Decl.], ¶¶ 28–29. For her part, Ms. Boutros asserts that the government has failed to prove an actual loss of greater than $1.3 million. *See* Def.'s Mem. in Aid of Sentencing, ECF 53-1 [hereinafter Def.'s Mem.], at 54–55. Accordingly, consistent with her plea agreement, she concedes a restitution order of $1.3 million and money judgment in that amount less the value of the assets seized. *See id.* at 55–56.

For the reasons that follow, the court finds an actual loss of $2.1 million. Consequently, the court orders restitution of $2.1 million and orders Ms. Boutros to forfeit a money judgment of $1,603,945.59.

I.

**Restitution**. Bank Fraud is "an offense against property" under Title 18, and thus restitution is governed by the Mandatory Victims Restitution Act ("MVRA"). *See* 18 U.S.C. § 3663A. Under the MVRA, "'[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence' with the government bearing the burden to establish the amount of loss suffered by the victim." *See In re Sealed Case*, 702 F.3d

2

59, 66 (D.C. Cir. 2012) (quoting 18 U.S.C. § 3664(e)). The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663(a)(2). The amount of restitution owed to each victim "must be based on the amount of loss *actually* caused by the defendant's conduct." *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010) (internal quotation marks and citation omitted).

"[O]nce the Government has satisfied its burden to offer evidence supporting its restitution calculation, the burden shifts to the defendant to dispute that amount with her own evidence." *United States v. Stone*, 866 F.3d 219, 227 (4th Cir. 2017); *see also United States v. Bikundi*, 926 F.3d 761, 791 (D.C. Cir. 2019), *cert. denied*, No. 19-1020, 2020 WL 3405990 (U.S. June 22, 2020), *and cert. denied*, No. 20-5235, 2020 WL 5883832 (U.S. Oct. 5, 2020). Because "the determination of the restitution amount is by nature an inexact science," *Huff*, 609 F.3d at 1248 (cleaned up), "the amount of restitution [need not] be proven with exactitude," *Sealed Case*, 702 F.3d at 66. "The preponderance standard must be applied in a practical, common-sense way," *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013), and the court should "resolv[e] uncertainties with a view toward achieving fairness to the victim," *Huff*, 609 F.3d at 1248 (cleaned up).

Especially in cases where factual uncertainties arise, a district court may "estimate, based upon the facts in the record, the amount of [the] victim's loss with some reasonable certainty." *Sealed Case*, 702 F.3d at 66; *see also United States v. Seignious*, 757 F.3d 155, 163–64 (4th Cir. 2014) (holding that restitution was adequately supported where "district court's account of the evidence [wa]s plausible in light of the record viewed in its entirety"); *United States v. Salas-Fernandez*, 620 F.3d 45, 48 (1st Cir. 2010) (finding that, in determining the amount of restitution,

3

a "modicum of reliable evidence" will suffice). This is because "[t]he law cannot be blind to the fact that criminals rarely keep detailed records of their lawless dealings, totaling up every column and accounting for every misbegotten dollar." *United States v. Savoie*, 985 F.2d 612, 617 (1st Cir. 1993). "So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." *Id.*

***Forfeiture***. With respect to forfeiture, a person convicted of bank fraud must "forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of" the crime. 18 U.S.C. § 982(a)(2). As with restitution, the government bears the burden to establish the forfeiture amount and "must establish the nexus between the offense and the forfeiture request by a preponderance of the evidence." *United States v. Peters*, 732 F.3d 93, 98 (2d Cir. 2013). The burden then "shifts to the defendant to prove the inaccuracy of the loss calculation." *United States v. Dickerson*, 909 F.3d 118, 129–30 (5th Cir. 2018).

## II.

The court begins with the amounts not in dispute. Ms. Boutros has agreed to pay restitution totaling $1.3 million. Of that amount, $1,237,455 is attributed to the loss suffered by the following specific victims: Blue Pay ($598,965), BB&T ($378,545), Plooto, Inc. ($186,270), Coin Café ($31,675), and P.C. ($42,000). *See* Def.'s Resp. at 2; *see also* Frazier Decl. ¶ 3. The remaining $62,545 of the $1.3 million, Ms. Boutros has agreed, is for the court to apportion "to unspecified restitution victims in the [c]ourt's discretion." Def.'s Resp. at 2. As for the government, in its supplemental filing, it concedes that it is no longer seeking the $5,727 associated with JP Morgan Chase Bank ("JPMC") account holder N.D., *see* Frazier Decl. ¶ 28, or all but $74 of the $7,024 associated with A.S., *see id.* ¶ 29, bringing the proposed actual loss total to $2,254,076.57.

4

As for the amount in dispute, the government requests $954,076.57 for loss suffered as a result of various account intrusions occurring at JPMC. Ms. Boutros challenges that sum on two primary grounds: (1) that the government has not met its burden to show actual loss for transactions annotated as "reversed" on bank statements the government supplied as evidence, and (2) that the government has not met its burden to show that Ms. Boutros was the "direct and proximate cause of the harm suffered" for transactions that are not facially linked to her. *See* Def.'s Resp. 4–12; Gov't's Mem. at 2. The court addresses each of these arguments in turn.

***Reversed Transactions.*** For several transactions where the government provides bank statements as evidence and alleges that JPMC suffered a loss, Ms. Boutros argues "that the transactions either did not go through, were reversed back, and/or were frozen at the destination institution before she was able to access any funds." Def.'s Reply Mem. in Aid of Sentencing, ECF No. 56-1 [hereinafter Def.'s Reply], at 7. In support of that claim, Ms. Boutros points to annotations on the statements showing that the transactions were "reversed," indicating a credit on the account. *Id.* at 7–11; Def.'s Resp. at 4–5, 7–12. Ms. Boutros also provides email evidence that several disputed transactions associated with JPMC account holder I.H.T.W. were blocked and reversed. Def.'s Resp. at 10–11; *id.*, Ex. 1, ECF No. 69-1 [hereinafter Def.'s Resp. Ex. 1].

By the court's calculation, Ms. Boutros has credibly shown that approximately $148,783.05 of the restitution amount requested by the government was either reversed or is otherwise lacking substantiation in the record evidence. *See* Notice of Sealed Filing, ECF No. 55 [hereinafter Gov't's Sealed Filing], Attach. 7, ECF No. 55-4 [hereinafter Attach. 7], at 14 (showing at least $3,837.12 in claimed transactions associated with M.A. were reversed); *id.* at 12–13 (showing $7,500 in reversed transactions associated with E.S.); *id.* at 43–44 (showing reversed transactions totaling $33,150 associated with A.E. and H.E.); *id.* at 40 (showing $15,000 Keybank

transaction for S.D. was reversed and credited); Def.'s Resp. Ex. 1 (showing that at least $19,066.11 of the "GUSTO" transactions associated with I.H.T.W. were blocked and never credited to Ms. Boutros); Def.'s Resp. at 7–8 (explaining the lack of evidence supporting the claimed $19,433.85 with respect to H.S., including the statement provided by Ms. Boutros showing the transactions were reversed); Gov't's Sealed Filing, Attach. 6, ECF No. 55-3 (showing reversed transactions for $50,795.97 associated with H.S.G.).

In response, the government offers a declaration from Gary Frazier, a forensic accountant with the Federal Bureau of Investigation. He asserts that "the government is only seeking restitution for transactions in which [JPMC] . . . has represented to the government that they suffered a loss." Frazier Decl. ¶ 5. But this contention only underscores that it is not possible to tell from the face of a bank statement whether a transaction annotated as "reversed" represents an actual loss for the bank. *Id.* ¶ 4. Surely if JPMC suffered a loss for specific fraudulent transactions, it must have received some notice that those funds were unavailable when it tried to recover the fraudulently transferred funds from the receiving bank. In other words, JPMC should have some evidence to corroborate its claim that a reversed transaction resulted in a loss for the bank. Yet, the government has made no attempt to offer such evidence, relying only on its own (and in some places contradictory) affidavits even after being placed on notice at the sentencing hearing of the possible insufficiency of the evidence. *See* Hr'g Tr. (draft), Oct. 5, 2020, at 35–40. Accordingly, in light of the credible challenges raised by Ms. Boutros, the court concludes that the government has failed to satisfy its burden of establishing JPMC suffered $148,783.05 in losses from reversed or otherwise unsubstantiated transactions.

**Linkage to Ms. Boutros.** Ms. Boutros next argues that for many transactions, including the government's request for $683,159.66 in restitution for "[a]dditional JPMC account

intrusions," the government has failed to show that she was the direct and proximate cause of the loss.  *See* Def.'s Resp. 5–6.  Regarding the account intrusions for which the government provided bank statements, Ms. Boutros takes issue with the transactions reflected on those statements that lack a clear connection to her.  *See, e.g.*, *id*. at 8.  Although some transactions bear some variation of her name in the transaction description (e.g., those indicating payment to "Wav*Steele Legal," "Www.Steelemounta," etc.)—as to which she offers no objections—others bear only the names of a third-party institution such as Paypal or Veem.  *See, e.g.*, Attach. 7 at 42.  Ms. Boutros denies responsibility for all such transactions, arguing that she has no recollection of them and that the government has failed to prove her connection to them.  *See* Def.'s Resp. at 8; Def.'s Reply at 6.  The government answers that Ms. Boutros's unwillingness to accept responsibility for those transactions "flies in the face of the evidence," Gov't's Mem. at 2, given both their temporal proximity and overall similarity to the fraudulent transactions she has admitted to causing, and the fact that forensic review of her computer identified joint accounts with victims at the relevant institutions, *see, e.g.*, Frazier Decl. ¶¶ 13, 18.  The court agrees with the government.

Although it is unclear why the government did not provide supporting information from its forensic analysis of Ms. Boutros's computer or otherwise link that information to the transactions listed on the JPMC statements, this deficiency is not fatal.  In all instances, Ms. Boutros has admitted to other fraudulent transactions associated with the same accounts.  The fact that she claims to have no recollection of particular transactions is unpersuasive considering the sheer magnitude of Ms. Boutros's fraudulent activity, her diminished mental capacity, and her contemporaneous substance abuse.  Although it is indeed *possible* that someone else with access to the stolen account information could have hacked into these same accounts, it seems highly unlikely that they would have done so in the exact same manner, and at the exact same time, as

Ms. Boutros. Thus, in light of the record viewed in its entirety, the court finds it is reasonable to infer that Ms. Boutros is responsible for the loss associated with these disputed transactions.

That same reasoning applies to the "additional account intrusions" for which the government claims loss. Mr. Frazier explains that the amount claimed is the result of a JPMC query for losses during the time period for which Ms. Boutros engaged in fraud in accounts to which Ms. Boutros was known to have access. *See* Frazier Decl. ¶¶ 35–36. Ms. Boutros's point that absent additional proof of these transactions there is no way to know if they were reversed or otherwise unsubstantiated is a fair one. *See* Def.'s Resp. at 6. But considering the record in its entirety, and the fact that the court need not achieve an exact measurement of loss, the court is satisfied that the government has met its burden of showing that Ms. Boutros was the direct and proximate cause of these losses. *See Sealed Case*, 702 F.3d at 66 ("[T]he district court's charge is 'to estimate, based upon facts in the record, the amount of [the] victim's loss with some reasonable certainty.'").

\*   \*   \*

Accordingly, when the court subtracts from the originally estimated actual loss of $2,266,753.57 (1) the $148,784.03 in challenged "reversed" transactions and (2) the $12,677 that the government concedes Ms. Boutros is not responsible for, it arrives at a final actual loss approximating $2.1 million.

## III.

For the foregoing reasons, Ms. Boutros is hereby ordered to pay restitution totaling $2.1 million to the following victims in the bracketed amounts: Blue Pay ($598,965), BB&T ($378,545), Plooto, Inc. ($186,270), Coin Café ($31,675), P.C. ($42,000), and JPMC ($862,545). In addition, Ms. Boutros shall forfeit a money judgment in the amount of $1,603,945.59 ($2.1

million – $496,054.41).  The Judgment entered on October 5, 2020 shall be amended to reflect these sums.

Dated: November 12, 2020

_____
Amit P. Mehta
United States District Court Judge